# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| KEITH LYNCH,<br><br>    Plaintiff,<br><br>vs.<br><br>CUSTOM WELDING & REPAIR, INC., et al.,<br><br>    Defendants. | No. C14-4072-LTS<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This case is before me on cross-motions (Doc. Nos. 13, 14) for summary judgment. Both motions are resisted (Doc. Nos. 15, 16) and defendants have filed a reply (Doc. No. 17) in support of their motion. While defendants have requested oral argument, the issues have been thoroughly briefed such that I do not find oral argument to be necessary. *See* N.D. Ia. L.R. 7(c). Both motions are fully submitted and ready for decision.

## II. PROCEDURAL HISTORY

Plaintiff Keith Lynch (Lynch) commenced this action on September 2, 2014, by filing a twenty-one complaint (Doc. No. 2) against defendants Custom Welding & Repair, Inc. (Custom), and Randal G. Sease d/b/a Sease Law Firm (Sease). Counts I through VII of the complaint assert that Sease, while attempting to collect a debt allegedly owed by Lynch to Custom, committed various violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*. Counts VIII through XIV allege that Sease's conduct also violated the Iowa Debt Collection Practices Act (IDCPA), Iowa Code § 537.7101, *et seq*. Finally, Counts XV through XXI describe various alleged

violations of the IDCPA by Custom. Defendants filed an answer (Doc. No. 4) on November 3, 2014, denying liability with regard to all counts.

This case was referred to me (Doc. No. 8) on January 12, 2015, after the parties unanimously consented to trial, disposition and judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Discovery is closed and trial is scheduled to begin January 25, 2016. *See* Doc. No. 9.

### III. UNDISPUTED FACTS

The following facts are undisputed for purposes of both motions:

On or about July 15, 2013, Lynch consulted Custom, a welding shop in Everly, Iowa, to repair a gearbox owned by Lynch. This was the first time Custom had performed services for Lynch. At the completion of the project on July 31, 2013, Lynch paid Custom $500. A dispute arose as to whether a balance remained. As a result of this dispute, Custom retained possession of the gearbox. After the initial payment from Lynch, Custom continued to seek additional payments and sent Lynch invoices that included finance charges. Custom sent Lynch a final invoice for $606.31 on April 30, 2014, indicating that the gearbox would be disposed of unless the balance was paid.

In addition to sending invoices, Custom contacted Sease, who had previously represented Custom with regard to corporate law matters. On April 16, 2014, Sease sent a letter to Lynch that read as follows:

> Please be advised that your outstanding account with Custom Welding & Repair has been forwarded to my office for collection. In that regard, please find a current billing showing an outstanding account of $606.15.
>
> The purpose of this letter is to make a demand on you in the amount of $606.15 plus $50.00 for attorney fees for a total of $656.15 to be paid to my office within the next 10 days. Failure to make payment within the

next 10 days will result in an action filed in the Iowa District Court in and for Clay County.

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

Doc. No. 13-3 at 34 (emphasis in original). Sease directed no other correspondence to Lynch.

Sease is a sole practitioner who has one employee, a legal secretary. In an affidavit and answers to interrogatories, Sease states that he has practiced law as a small town general trial practitioner for 30 years and has handled over 4,000 matters. He estimates that less than 10 of those matters, representing less than one percent of his business, have related to the collection of money on behalf of another party.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could

3

return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis*, *Fargo &*

*Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V. ANALYSIS

### A. *The Fair Debt Collection Practices Act*

In Counts I through VII, Lynch alleges that Sease violated the FDCPA because he acted as a "debt collector" within the meaning of the act and, in that capacity, failed to comply with various FDCPA obligations.[1] Sease argues that he did not violate the act because he does not, as a matter of law, fall within the statutory definition of debt collector.

#### 1. *Applicable Law*

The FDCPA was designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As a threshold matter, a plaintiff seeking relief under FDCPA must prove that he or she is a "consumer" and that the defendant is a "debt collector" who violated a provision of the statute while attempting to collect a "debt." *Scott v. Portfolio Recovery Assocs., LLC*, ___ F. Supp. 3d ___, 2015 WL 6160003, at *4 (S.D. Iowa Oct. 16, 2015) (citing *Mayhall v. Berman & Rabin, P.A.*, No. 4:13CV0175 AGF, 2014 WL 340215, at *4 (E.D. Mo.

---

[1] The alleged violations include Sease's demand that Lynch pay $50 in attorney fees, Sease's threat to commence litigation (which never happened) and Sease's failure to include various disclosures that are required when a debt collector communicates with a consumer.

5

Jan. 30, 2014)); *see also Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1065 (D. Minn. 2008) (plaintiff must establish defendant is a debt collector).

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, the statute establishes two alternative tests for considering whether a defendant is a debt collector: (1) the "principal purpose" test, which applies if the defendant "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts;" and (2) the "regularly collects" test, which applies if the defendant "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.*

The Supreme Court has held that the "regularly collects" test will encompass an attorney if that attorney regularly engages in consumer debt collection efforts, even when those efforts involve litigation. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995). The Eighth Circuit Court of Appeals has applied the "principal purpose" test to hold that a defendant was a debt collector because its "principal business--some eighty percent--is processing dishonored checks." *Volden v. Innovative Financial Systems*, Inc., 440 F.3d 947, 952 (8th Cir. 2006). Other circuit courts of appeal have likewise concluded that the FDCPA focuses on the defendant's principal or regular activities to determine whether the defendant is debt collector under the statute. *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) ("The [FDCPA] defines 'debt collector' as any individual in a business whose 'principal purpose … is the collection of any debts, or who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due to another.'") (citing 15 U.S.C. § 1692a(6)); *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) ("The FDCPA establishes

two alternative predicates for "debt collector" status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity"); *Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 118 (3d Cir. 2007) ("Thus, a business may be a "debt collector" because its "principal purpose" is the collection of debts or because it "regularly" engages in the collection of debts"); *Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992) (finding the "principal purpose" of the defendant's business qualified him as a debt collector when 70-80% of his legal fees were generated from debt collection); *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 41 (5th Cir. 2008) ("The [FDCPA] contains two categories of debt collector, those who collect debts as their 'principal purpose,' and those who do so 'regularly'"); *Glazer v. Chase Home Finance L.L.C.*, 704 F.3d 453, 463 (6th Cir. 2013) ("[the FDCPA] defin[es] a "debt collector" as one whose principal business purpose is the "collection of any debts" or who "regularly" collect debts"); *Gillard v. Michalakos*, 365 Fed. Appx. 1, 1-2 (7th Cir. 2010) (upholding the district court's finding that the defendant was not a debt collector when the complaint did not allege that the defendant regularly collected debts or "the principal purpose of his law practice was to collect debts"); *Romine v. Diversified Collection Services, Inc.*, 155 F.3d 1142, 1145 (9th Cir. 1998) ("We note first that the [FDCPA] regulates the conduct of "any person" in "any business" whose (1) principal purpose is debt collection, or (2) who regularly collects or attempts to collect debts, directly or indirectly"); *James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013) ("The FDCPA establishes two alternative predicates for 'debt collector status': 1) engaging in debt collection as the 'principal purpose' of the entity's business; or 2) engaging in debt collection 'regularly'"); *Birster v. American Home Mortg. Servicing, Inc.*, 481 Fed. Appx. 579, 583 (11th Cir. 2012) ("The statutory text clearly states that, to qualify as a 'debt collector,' the 'principal purpose' of 'any business' must be 'the collection of any debts' or that the business must 'regularly collect[ ] or attempt[ ] to collect … debts.'").

### 2. Discussion

#### a. The "Principal Purpose" Test

Here, Lynch relies primarily on the "principal purpose" test to allege that Sease is a debt collector. Indeed, he faults Sease for focusing on the "regularly collects" test:

> Sease focuses on the latter definition without analysis of the former. This is likely for good reason, as in this case, the undisputed evidence shows that Sease acted as a debt collector by using the mail for the express purpose of collecting a debt.

Doc. No. 16 at 3. Similarly, Lynch states: "Because the principal purpose of the business Sease conducted <u>in this case</u> was the collection of a debt using the mail, Sease is a 'debt collector' as defined by the FDCPA." Doc. No. 14-1 at 3 (emphasis added). In other words, according to Lynch, because Sease sent one letter by mail and the "principal purpose" of that letter was collect a debt, Sease is a debt collector within the meaning of the FDCPA.

This argument might have some merit were it not for the statute's express language and the utter lack of supporting case law. The statute plainly refers to the "principal purpose" of the defendant's business, not the principal purpose of a particular communication. 15 U.S.C. § 1692a(6). As set forth above, cases applying the FDCPA likewise focus on the nature of the defendant's business in determining whether the defendant falls within the statutory definition of debt collector. Other than citing *Heintz* for the obvious proposition that attorneys may fall within the statutory definition, Lynch provides absolutely no analysis of whether the principal purpose of Sease's business is debt collection. To borrow Lynch's phrase, this is likely for good reason.

Sease has submitted undisputed information indicating that his business is a general, small-town trial practice with less than one percent of his business relating to the collection of money. As a matter of law, Lynch has failed to meet his burden of showing that Sease is a debt collector under the "principal purpose" test.

### b.     The "Regularly Collects" Test

This leaves the "regularly collects" test which, as I noted above, is not the focus of Lynch's argument. Indeed, Lynch's only contention regarding the "regularly collects" test is that Sease is precluded from arguing that he does not regularly collect debts because he objected to certain discovery requests. Doc. No. 16 at 4-5. During discovery, Sease answered interrogatories and document requests concerning his practice and his debt collection activities. Doc. No. 10-2. He objected only to two document requests. One sought "[a]ll documents related to the collection of any money by Defendant on behalf of third parties within the last 6 years." Doc. No. 10-2 at 30 (Req. No. 15). Sease objected on grounds that the requested information was not likely to lead to relevant evidence, was overly broad and unduly burdensome and was protected by the attorney client privilege. *Id.* The other request sought "all documents related to Defendant's bookkeeping or accounting for the last 6 years, such as profit/loss statements, tax returns, and any other business records showing the source of Defendant's income." *Id.* (Req. No. 16). Sease objected on grounds that his tax returns are "private and not discoverable" while also stating that he has no "profit loss statements, bookkeeping or accounting records." *Id.*

On July 17, 2015, Lynch filed a motion (Doc. No. 10) to compel the production of additional records. However, Lynch's counsel failed to comply with Local Rule 37[2]

---

[2] Rule 37 states, in relevant part:

> **a.    Declaration Required.** No motion relating to discovery may be filed unless counsel for the moving party electronically attaches to the motion a declaration, subscribed under penalty of perjury pursuant to 28 U.S.C. § 1746, attesting to the following:
>
> 1.    Counsel, in good faith, has conferred <u>personally</u> with counsel for the opposing party in an attempt to resolve or narrow by   agreement   the issues raised by the motion;

by conferring personally with Sease's counsel before filing the motion. As such, I denied the motion by order filed August 20, 2015. *See* Doc. No. 12. Nothing in the record suggests that Lynch did anything else, formally or informally, to obtain the business records at issue.

I find that Sease's objections were, at the very least, colorable. Had Lynch's counsel taken the seemingly-routine step of calling Sease's counsel, and attempting to resolve or narrow the issues, perhaps additional documents would have been produced. In any event, Lynch has failed to show that Sease acted in bad faith or that the production of additional documents would have any impact on the analysis. Sease has provided an affidavit, in addition to his interrogatory answers, describing the extremely-limited portion of his practice that has involved the collection of money on behalf of others. *See, e.g.*, *James*, 724 F.3d at 1318-19 (holding that a court may rely on a party's affidavit and answers to interrogatories, without more, in determining that the party is not a debt collector). I reject Lynch's contention that Sease's objections to certain discovery requests somehow precludes Sease from arguing that he does not regularly collect debts.

As for the merits of the issue, the Eighth Circuit has yet to determine what constitutes "regularly" engaging in debt collection under the FDCPA. However, the Second Circuit has held that "the question of whether a lawyer or law firm 'regularly'

---

    2.    The lawyers have been unable to reach an agreement; and

    3.    The nature of the disagreement.

In the alternative, counsel for the moving party may certify in a written declaration, subscribed under penalty of perjury pursuant to 28 U.S.C. § 1746, that a personal conference with opposing counsel was impossible, and describe the efforts undertaken to schedule the conference. An exchange of written communications or a single telephone message will not, by itself, satisfy the requirements of this section.

N.D. Ia. L.R. 37(a).

engages in debt collection activity . . . must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity." *Goldstein*, 374 F.3d at 62. The court then listed various non-exclusive factors that are relevant to the determination:

> Most important in the analysis is the assessment of facts closely relating to ordinary concepts of regularity, including (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations. Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Id*. at 62-63 (footnote omitted). Other courts have adopted similar approaches to this issue. *See, e.g.*, *James*, 724 F.3d at 1317-18) (adopting the *Goldstein* analysis); *Hester v. Graham, Bright & Smith, P.C.*, 289 Fed. Appx. 35, 41 (5th Cir. 2008) (citing *Goldstein* favorably and applying a similar analysis). In the absence of controlling Eighth Circuit authority, I find it appropriate to apply the *Goldstein* analysis.

In considering the *Goldstein* factors, I conclude that Lynch has failed, as a matter of law, to show that Sease regularly engages in debt collection activity. The record demonstrates that debt collection has amounted to less than one percent of Sease's business over the past six years. Doc. No. 13-3 at 3; *see Schroyer*, 197 F.3d at 1176 (finding that two percent of an overall law practice did not amount to regularly engaging

11

in debt collection).  Additionally, Sease has not had an ongoing relationship with any debt collection entity.  Doc. No. 13-3 at 4; *see Schroyer*, 197 F.3d at 1176 (noting the lack of an ongoing relationship with any client whose business substantially involves debt collection); *see also Goldstein*, 374 F.3d at 63 (finding that ongoing relationships with entities engaged in debt collection supported a finding that the firm had regularly engaged in debt collection).  Sease has had no employees dedicated to debt collection, nor any system in place to facilitate debt collection.  Doc. No. 13-3 at 4; *Golstein*, 374 F.3d at 62.

Lynch has presented no evidence that Sease is regularly engaged in debt collection.  The record contains only a single debt-collection letter – the one Sease sent to Lynch.  This does not suffice.  *See Schroyer*, 197 F.3d at 1175 ("the legislative history hardly makes clear that attorneys who collect debts occasionally and small firms that collect debts incidentally to their general law practices are 'debt collectors' under the FDCPA").  As a matter of law, Lynch has failed to meet his burden of showing that Sease is a debt collector under the "regularly collects" test.  Because Sease is not a debt collector within the meaning of the FDCPA, he is entitled to judgment in his favor as a matter of law on Counts I through VII of the complaint.

### B.     *The Iowa Debt Collection Practices Act*

In the remaining fourteen counts of his complaint, Lynch contends that both Sease and Custom violated the IDCPA, Iowa Code § 537.7103.  Lynch argues that he has established Sease's and Custom's liability under the IDCPA as a matter of law.  Sease and Custom disagree and contend that the transaction at issue does not, as a matter of law, fall within the IDCPA's definition of a "consumer credit sale."  Moreover, and as a threshold issue, Sease and Custom argue that if summary judgment is granted in Sease's favor on the FDCPA claims, then the court should decline to exercise supplemental

12

jurisdiction over Lynch's fourteen IDCPA claims. I will address that argument to determine whether it is necessary to consider the merits of Lynch's IDCPA claims.

### 1. *Applicable Standards*

A district court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). While the determination of whether to dismiss state-law claims pursuant to § 1367(c)(3) is a matter of discretion for a district court, "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray County*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Among other things, this reflects a policy that federal courts should avoid addressing state law issues when possible. *Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000).

### 2. *Analysis*

Having disposed of all of the federal claims in this case, I find it appropriate to decline to exercise jurisdiction over Lynch's IDCPA claims. As evidenced by the parties' arguments, the statutory scheme enacted by the IDCPA differs in many ways from that created by the FDCPA. For example, the IDCPA's definition of "debt collector" is more expansive than the FDCPA's. *Compare* Iowa Code § 537.7102(5)

with 15 U.S.C. § 1692a(6). However, the IDCPA includes a narrower definition of "debt." *Compare* Iowa Code § 537.7102(3) with 15 U.S.C. § 1692a(5). The "debt" definition set forth in the IDCPA requires consideration of additional statutory definitions, including the definition of a "consumer credit sale." Iowa Code §§ 537.7102(3), 537.1301(12)-(13). Determining whether the transaction between Lynch and Custom fell within the IDCPA will require a detailed analysis of Iowa statutes and case law. With no federal claims remaining in this case, I find that this is best left to the Iowa state courts.

In addition, I note that this court has already devoted significant resources to a twenty-one count lawsuit that arose from one letter sent to collect an alleged debt of less than $700. As explained earlier in this order, the FDCPA claims – which were the only claims that gave rise to federal jurisdiction – were extremely weak. I see no reason for this court to spend further time and effort on the question of whether Lynch's state law claims are any better.

## VI. CONCLUSION

For the reasons set forth herein:

1. Plaintiff's motion (Doc. No. 14) for summary judgment is **denied in its entirety**.

2. Defendants' motion (Doc. No. 13) for summary judgment is granted with regard to Counts I through VII of the complaint. Those counts are **dismissed with prejudice** and judgment on those counts shall enter in favor of Sease and against Lynch.

3. Defendants' motion (Doc. No. 13) for summary judgment is **denied** with regard to the remaining counts (VIII through XXI) of the complaint. However, because all of the remaining counts are state law claims over which this court declines to exercise supplemental jurisdiction, they are **dismissed without prejudice.**

4. Because this order disposes of all pending claims, this case is **closed**.

**IT IS SO ORDERED.**

**DATED** this 6th day of November, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE